# CHARLESTON.

## KNOTT v. MANUFACTURING CO.

Submitted January 21, 1888.—Decided February 11, 1888.

1. LIEN—EQUITABLE LIEN—CREATION.

Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein identified, a security for a debt or other obligation, or whereby the party promises to convey, assign, or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property. (p. 795.)

2. LIEN—EQUITABLE LIEN—CREATION.

> An obligation in writing *held* not to create any equitable lien on the property therein mentioned.   (p. 795.)

3. EQUITY JURISDICTION—SPECIFIC PERFORMANCE.

> The test of equity jurisdiction, in respect to the enforcement of personal covenants, is the inadequacy of the legal remedy of damages in the class of contracts to which the particular instance belongs.   (p. 792.)

4. EQUITY JURISDICTION—SPECIFIC PERFORMANCE.

> A court of equity will not exercise its jurisdiction to grant the remedy of an affirmative specific performance, however inadequate the remedy of damages, whenever the contract is of such a nature that the decree for its specific performance can not be enforced by the ordinary processes of the court.   (p. 796.)

*G. M. Beltzhoover* and *G. Baylor* for appellant.

*W. H. Travers* for appellee.

SNYDER, JUDGE :

The Shepherdstown Manufacturing Company, a corporation, applied to William J. Knott for a loan of money. The negotiations were carried on for some time before the loan was effected. It was at one time proposed to fix the amount of the loan at $10,000.00, and secure it by a trust-deed upon the property of the company. Pursuant to this proposition such deed was prepared and submitted to Knott, but upon his objecting to some of its conditions, this deed was cancelled, and by agreement of the parties the amount of the loan was fixed at $7,500.00, which sum was paid by Knott to the company, and according to the final agreement between the parties, the company delivered to Knott an obligation which was accepted by him. The said obligation, duly executed by the company and dated February 16, 1884, is as follows :

" One year after date the Shepherdstown Manufacturing Company, at Shepherdstown, West Va., promises and binds itself to pay to Wm. J. Knott or order seven thousand and five hundred dollars, for value received, with interest from date ; and the said company covenants to have its buildings, machinery, &c., insured in responsible companies for not less than nine thousand dollars, and to renew and keep said insurance in force so long as this debt shall remain unpaid, and to transfer

said policies of insurance to said Wm. J. Knott, as additional security for its obligation; and the said company further covenants that it will not give any voluntary lien of any character whatever on any of its buildings, machinery, or grounds so long as this debt remains unpaid."

The company insured the property, and assigned the policies to Knott as required by the terms of said obligation. At the maturity of the debt, the same was not paid, and upon the failure of the company either to pay the debt or secure it to him by the personal note of the directors or other satisfactory security, Knott instituted an action at law upon it about October 1, 1885, in the Circuit Court of Jefferson county, and obtained a judgment thereon at the February term, 1886, of said court for the sum of $7,962.50, with interest from February 24, 1886, until paid, and his costs. About the time Knott commenced his said action at law, the Jefferson Savings Bank, H. W. Potts, and others, brought actions in said court against said company, and at the November term, 1885, recovered judgments thereon aggregating about $9,000. By deed dated November 16, 1885, said company conveyed to G. M. Beltzhoover, trustee, all its property, real and personal, as well as all its credits and choses in action, in trust, to secure the payment of all its just debts and liabilities, as shown by the books of said company, equally and without preference to any. This deed was duly acknowledged, and recorded in Jefferson county on the day of its date.

W. J. Knott, in April, 1886, instituted this suit in the Circuit Court of Jefferson county against the said company, Beltzhoover, trustee, the creditors who had recovered judgments as aforesaid, and the unknown creditors of said company. The plaintiff's bill, in addition to the facts hereinbefore stated, alleges that at the time the plaintiff accepted said written obligation, it was agreed by the board of directors of the company that, in the event of a suit by any other creditor during the existence of said loan, the company would confess judgment in favor of the plaintiff for the amount due him. It also alleges that a majority of the directors of said company are also directors of the Jefferson Savings Bank, and that the directors of the latter, by reason of their relations to the former, fraudulently influenced the company to take up the unma-

tured notes held by the bank against it and substitute therefor other notes, payable at an earlier period, in order to put the bank in a position to obtain judgment on its debt sooner than it could otherwise have done, to the prejudice of the plaintiff; that the execution of the said trust-deed was in violation of the agreement between said company and the plaintiff, and was made with the intent to defraud him; that the insurance-policies assigned to secure his debt have expired, and the company has refused to renew the same and assign them to him as it bound itself to do; and that said company is insolvent. In regard to his claim, the plaintiff alleges that, believing the property of the company would be ample security for his debt, if otherwise unencumbered, he agreed to make the loan, "provided it would in some manner have the rank or hold the position, in effect, of a preferred claim or first lien upon the company's said property;" and to evidence said agreement the said written obligation was executed and accepted by him.

The prayer of the bill is " that the debt of the plaintiff, as ascertained by the judgment obtained thereon and set forth in this bill, be declared and established to be the first lien upon the buildings, machinery, and grounds of said company ; that said company be required to insure in some responsible insurance company, for not less than $9,000.00, the buildings, machinery, &c., of the said company for the benefit of the plaintiff; and for such other, further, and general relief as the nature of the case may require," etc.

The company demurred to the bill, which demurrer the court overruled. The said company, the savings bank, and others filed answers; depositions were taken on both sides; and on August 8, 1887, the court entered a decree that the plaintiff is entitled to an equitable first lien on the buildings, machinery, and grounds of the company for his said debt of $7,500.00 as against the creditors, secured in the trust deed of November 16, 1885, but subject to the prior liens of the judgments. And then, after fixing the order of priority and amounts of said judgments and the plaintiff's debt, it decreed the buildings, machinery, and grounds of the company to be sold by commissioners, unless the plaintiff's debt should be paid within sixty days. From this decree the defendant, the

Shepherdstown Manufacturing Company, obtained this appeal.

From the preceding statement, which contains the substance of the bill, it is manifest that this is not a suit brought either for the purpose of setting aside the trust-deed on the property of the company, or to ascertain the debt and enforce the trust deed and obtain a sale of the property. The sole object of the bill, so far as any purpose can be discovered from its averments, is to have the plaintiff's debts " in some manner " declared to be " a preferred claim or first lien upon the company's property." This is the only claim set forth in the bill, and it is the thing distinctly demanded in the prayer, which asks " that the debt of the plaintiff be declared and established to be the first lien " on the property of the company. I have heretofore given the full text of the written obligation which is exhibited as the instrument securing this alleged lien. The first part of this obligation is simply the bond of the company for the money due the plaintiff. Following that are two covenants, the one affirmative and the other negative. The first is in these words: "And the said company covenants to have its buildings, machinery, &c., insured in responsible companies for not less than $9,000.00, and to keep said insurance in force so long as this debt shall remain unpaid, and to transfer said policies of insurance to said W. J. Knott as additional security for this obligation." The averments of the plaintiff's bill show that the insurance here specified was effected by the company, and the policies assigned to the plaintiff as required by the covenant. It is, however, averred that the policies have expired, and the company has refused to renew them and assign the same to the plaintiff. How the refusal of the company to comply with its covenant to renew the insurance policies upon its buildings, machinery, &c., and assign the same to the plaintiff, could create an equitable or any other kind of lien upon the buildings, machinery, and grounds of the company, I am unable to discover. The grounds are nowhere mentioned or referred to in this covenant. The contraction " &c." could not refer to them, for the reason that no one would effect an insurance on grounds.

The form or peculiar nature of the agreement which shall

create a lien is not very material, for equity looks rather at the final intent and purpose than at the form; and if the intent appears to give, or to charge, or pledge property, real or personal, as security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows. *Wayt* v. *Carwithen*, 21 W. Va. 516. Mr. Pomeroy, speaking of equitable liens, says : " The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien on the property so indicated, which is enforceable against the property in the hands, not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property." 3 Pom. Eq. Jur., § 1,235.

Broad as this doctrine is here stated to be, it falls far short of any principle that would create a lien out of the obligation here in question. It shows no intention, either express or implied, on the part of the contracting party to convey, transfer, or assign any property as security. The express and only intent declared is that the company will insure its buildings, machinery, &c., and transfer the policies to the plaintiff " as additional security for this obligation." The express intention is so definite and exclusive that it leaves no possible ground for implying any other intention or purpose. It is, however, sought to raise an implication from the use of the words " additional security for this obligation," that the insurance policies were to be in addition to some other security, and that this other security was a lien on the property. Such an inference is entirely unwarrranted. The obligation was the personal pledge of the company to pay the debt, and was therefore of itself a security in the general use of that term, and the insurance for the benefit of the creditor was consequently " additional security."

The second covenant is as follows: "And the said company further covenants that it will not give any voluntary lien of any character whatever on any of its buildings, machinery, or grounds so long as this debt remains unpaid." Of course this creates no lien on or pledge of any property. It is simply negative; an agreement not to do a particular thing. The creation of a lien is an affirmative act, and the intention to do such act can not be implied from an express negative. It seems to me that both of these clauses of the obligation are simply personal covenants, for the breach of which the remedy must be sought in a court of law. They create, as we have seen, no lien upon real estate, and give the plaintiff no interest therein. They simply impose a personal obligation upon the covenantor. It is possible the plaintiff might, by injunction, have restrained the company from executing any trust deed in violation of its covenant; but this suit is for no such purpose, and it is therefore unnecessary to consider that question. In regard to personal covenants of this character, the universal test of equity jurisdiction, admitted alike by the courts of England and of the United State, is the inadequacy of the legal remedy of damages in the class of contracts to which the particular instance belongs. 3 Pom. Eq. Jur., § 1,341. The covenant not to incumber the property, it seems to me, is clearly one for the breach of which the remedy at law is not only adequate but peculiarly appropriate. The damages, if any, must be the loss of the plaintiff's debt or some part of it, and to fix these damages is the peculiar province of a jury. It may be said that this remedy is inadequate by reason of the insolvency of the company, but the reply to this objection is that courts do not provide the means to pay debts, but only the means of enforcing their payment. Whether the debtor is solvent or insolvent is immaterial. The rules of law are the same in either case.

In regard to the covenant to insure the property for the use of the plaintiff, it is sufficient to say that the performance of that has become impossible. It is a familiar doctrine that a court of equity will not exercise its jurisdiction to grant the remedy of an affirmative specific performance, however inadequate may be the remedy of damages, whenever

the contract is of such a nature that the decree for its specific performance can not be enforced, and its obedience compelled by the ordinary processes of the court. 3 Pom. Eq. Jur., § 1,343. In order to effect an insurance on property, the party insuring must have in the property an interest either in his own right or as the representative of the owner equal to or greater than the amount of the insurance, and the insurance must in any case be for the benefit of the owner. *Sheppard* v. *Insurance Co.*, 21 W. Va. 368. The bill in this cause shows that all the property of the company has been conveyed to a trustee for the benefit of all its creditors. The company, therefore, could not insure the property for the sole use of the plaintiff, who is but one of its creditors; nor could the trustee do so. It could only be insured by either for the benefit of all the creditors. It being thus impossible to make any effective or enforceable decree in respect to this covenant, the court can not exercise jurisdiction in regard to it. It seems to me, therefore, that in no aspect of the plaintiff's bill does it present any ground for equitable relief, and that the demurrer should have been sustained.

It was alleged in the bill that the directors of the company agreed to confess judgment for the plaintiff's debt in the event any suit should be brought by any of its other creditors, and it is also alleged that the directors fraudulently facilitated the savings bank in obtaining a judgment on its debt to the prejudice of the plaintiff. Both of these allegations are positively denied by the answers of the bank and the company, and the proof is wholly insufficient to sustain either. It seems that the bank urged the plaintiff not to sue upon his debt, and informed him that if he did not sue it would not; but he persisted and brought his suit, and then the bank also sued, and in the race of diligence the bank, without any fraud or assistance from the company, obtained its judgment. I do not see, so far as this suit is concerned, that these allegations, if proved, could have any effect, but think, in justice to the parties thus charged with misconduct, it is proper to state that these charges were not shown to be true.

For the reasons stated, I am of opinion that the demurrer to the plaintiff's bill should have been sustained, and for

this error the decree of the Circuit Court is reversed, and this Court proceeding to pronounce such decree as that court should have entered, it is ordered that the said demurrer be sustained, and the plaintiff's bill dismissed.

AFFIRMED.