(19 App. Div. 552.)

WEMPLE v. HAUENSTEIN et al.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

1. ESTOPPEL—ELECTION OF REMEDIES.

Defendant promised, in writing, to pay, on his father's death, $2,500 to plaintiff, and further agreed to pay such amount out of any property that might come to him from the estate of his father; provided the debt should then remain unpaid. On the father's death, plaintiff sued for and recov-

ered a money judgment on said instrument, and issued an execution, which was levied on personalty bequeathed to defendant by the father, realizing, however, only a nominal sum, and demanded of the executor that he pay over, to be applied on the execution, all property in his hands belonging to defendant as beneficiary under the will, which demand was refused, and in surrogate's court claimed the right to receive said property on the judgment. *Held*, that plaintiff was not thereby precluded, on the ground of estoppel or of election of remedies, from asserting, in a subsequent action, that he had an equitable lien on the fund payable to defendant under the will, or that the instrument constituted an equitable assignment thereof.

2. EQUITABLE ASSIGNMENTS AND LIENS.

An agreement to pay a debt out of a designated fund does not give an equitable lien on the fund, or operate as an equitable assignment thereof.

3. REFORMATION OF INSTRUMENTS—MISTAKE OF LAW.

Where it is not alleged that the instrument is not in the form that both parties intended it should take, or that there was fraud in the transaction, the instrument will not be reformed at the instance of one of the parties because, by their mistake of law, it did not effectuate their intention.

4. ORDERS FOR MONEY—TRUSTS.

Defendant promised to pay on his father's death a sum of money to plaintiff, and further agreed to pay the amount out of any property that might come to him from the estate of his father. *Held* not to create a trust in favor of plaintiff in the property subsequently bequeathed to defendant.

5. PAROL AGREEMENTS—MERGER IN WRITING.

, Defendant applied to plaintiff for advances, agreeing to assign his interest in his father's estate to an amount equal to the moneys advanced. Afterwards a writing was executed whereby defendant promised to pay plaintiff the amount of the advances on the father's death, and agreed to pay said amount out of any property that might come to him from the father's estate, and the advances were made under such instrument. *Held*, that the parol agreement to assign was merged in the writing, and hence could not be proved in an action on the latter.

Appeal from special term, Albany county.

Action by John Wemple against John J. Hauenstein and Andrew Vanderzee, executor of the last will of John Hauenstein, deceased, and others, to establish a right to a fund payable to defendant Hauenstein under the will of deceased. From an order granting a motion to vacate a preliminary injunction order restraining defendant Vanderzee, as executor, from paying out the moneys bequeathed to defendant Hauenstein in said will, plaintiff appeals. Affirmed.

The instruments, construction of which is sought in the complaint, are as follows:

"Albany, Oct. 16, 1878.

"For value received, I hereby promise to pay to John Wemple twenty-five hundred dollars, with interest, payable at the death of my father, John Hauenstein; and I further agree with the said John Wemple to pay the amount due on said note out of any money or property that may come to me from the estate of my father, the said John Hauenstein, provided this note, or any part of the same, remains unpaid at that time; and this note is executed by me, and delivered to said Wemple, and accepted by said Wemple, upon the annexed conditions, which are made a part of this note.

"[Signed]                                   John J. Hauenstein."

"The conditions referred to in the foregoing note are as follows: That the said Wemple accept said note in full satisfaction and payment to said Wemple of any and all debts owing by said Hauenstein to said Wemple, and of any and all promissory notes heretofore executed for the accommodation of said Hauenstein, and which promissory notes were duly indorsed and negotiated by said Hauenstein; and, in consideration of the execution and delivery of the foregoing note by said Hauenstein to said Wemple, the said Wemple agrees to

and with said Hauenstein to pay said notes executed by said Wemple, as aforesaid, and indorsed by said Hauenstein, as aforesaid, at the maturity of the same, and to save the said Hauenstein harmless of and from all damages and costs which may arise by reason of said promissory notes.

  "[Signed]        John Wemple.
             "John J. Hauenstein.

 "Witness: Scott M. D. Goodwin."

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

  Van Alstyne & Hevenor (E. Countryman, of counsel), for appellant.
Burlingame & Le Boeuf and Peter A. Delaney, for respondents.

MERWIN, J. In March, 1894, John Hauenstein died, leaving a will, in and by which he devised or bequeathed to his son, the defendant John J. Hauenstein, certain property or moneys; and the defendant Vanderzee, as executor of the will, now has in his hands a fund which, by the terms of the will, is payable to said John J. The plaintiff claims that by virtue of certain transactions between him and John J., in October, 1878, he has an equitable charge or lien upon the fund for the payment of certain moneys then advanced by him to or for the said John J. This claim of the plaintiff is controverted by one or more of the defendants who have claims upon the fund, under transactions with John J. since the death of his father. This action is brought to establish the right of plaintiff to the fund, in preference to the other claimants, upon the theory that he has an equitable assignment thereof or lien thereon.

Two instruments were executed by John J. Hauenstein, bearing date October 16, 1878, and they are set out in full in the complaint. After the death of the father, and on May 31, 1894, the plaintiff commenced in the supreme court an action against John J. In the complaint in that action the execution and delivery of these two papers are alleged, and they are set out in full. It is also alleged that, subsequent to their date, the plaintiff paid and took up all the notes referred to in the conditions in the papers, and that the moneys paid by him for the same, together with the moneys for which the defendant John J. was indebted to him on the 16th October, 1878, amounted to more than $2,500, no part of which had been paid, except the sum of $1, paid October 15, 1894. It was also alleged that the father, at his death, in March, 1894, left a will, devising and bequeathing to John J. a legacy and property of an amount sufficient to pay the note. Judgment was demanded for the sum of $2,500, with interest from October 16, 1878, less $1. The defendant put in an answer, denying that plaintiff had taken up the notes referred to in the conditions, or that the defendant was indebted to plaintiff in the sum of $2,500. The defendant also set up the six year statute of limitations. The case went to trial, and the plaintiff recovered the sum of $5,242.95, besides costs. An execution was issued on the judgment, and under it the plaintiff levied upon and sold certain furniture specifically bequeathed to John J. in the will of his father, realizing, however, only a nominal sum. The sheriff also, at the request of the plaintiff's attorneys in the judgment, demanded of the executor that he pay over to him, to be applied upon the ex-

ecution, all moneys and property in his hands belonging to John J., as legatee or devisee under the will. The executor refused. It also appears that the plaintiff claimed in the surrogate's court the right to receive upon the judgment the moneys in the hands of the executor, the proceeds of property willed to John J.

It is argued on the part of the defendants that the plaintiff, by bringing suit against John J., and recovering judgment, and taking the proceedings which he did under the judgment, is now estopped from claiming that he has any equitable assignment or lien by virtue of the instruments of October 16, 1878; that he has treated the obligation as personal against John J., and the property as vesting in John J., and therefore cannot now claim a lien. The doctrine of election of remedies is sought to be applied. The suit upon the absolute promise of John J. to pay the amount was not inconsistent with any remedy the plaintiff might have upon the "further" agreement stated in the paper. The latter was not involved in the action, and no relief sought thereon. A money judgment was only asked for or obtained, and it only operated to fix the amount of the debt for which he might enforce any security he might have. The agreement of the debtor to pay out of his interest in his father's estate was only a security for the debt, as it was contemplated that the debt might be paid before the death of the father. The fact that, in trying to enforce the judgment, the plaintiff may have claimed to reach the fund or the property of the debtor, should not, at least at this stage of the case, interfere with any assertion by the plaintiff of an equitable lien or assignment. It is not apparent that the defendants have been injured by such claim, and the plaintiff, if he has a lien, was seeking only to obtain what he was entitled to have. The doctrine of estoppel or of election of remedies should not be applied.

The main question in the case is whether, upon the facts alleged in the complaint, the plaintiff has an equitable assignment or lien. At the special term the rule was applied, which is to be regarded as the settled law of this state (Williams v. Ingersoll, 89 N. Y. 518; Thomas v. Railway Co., 139 N. Y. 163, 34 N. E. 877), that an agreement, either by parol or in writing, to pay a debt out of a designated fund, does not give an equitable lien upon the fund, or operate as an equitable assignment thereof. Taking the instrument alone, I see no way of avoiding the application of this rule. The plaintiff, however, claims that the intention of the parties was that the plaintiff should have an assignment or lien, and that, if the instrument as executed does not give this, reformation should be had in this action. The complaint was drawn evidently upon the theory that reformation was not needed or desired. It was not prayed for. The relief asked was that the papers should be adjudged to be an assignment. It was alleged that, when John J. applied to the plaintiff for pecuniary assistance, he "represented that, at the death of his said father, he [the said defendant John J. Hauenstein] would become possessed of one-half of his father's estate, and, if the plaintiff would assist him as requested, he would assign to plaintiff his interest in said estate, to an extent to be equal to pay the moneys

so advanced by plaintiff, or to procure which plaintiff should assist him, and become responsible, with interest thereon; the same not to be due or payable until the death of said John Hauenstein. This plaintiff consented so to do in consideration of said assignment for the purpose above mentioned, and, as security to plaintiff for the repayment to him of such moneys advanced or procured, the said John J. Hauenstein made, executed, and delivered to plaintiff, at the time they bear date, the two papers of which the following are copies." The papers are then set out in full, and it is then alleged that the plaintiff was "ignorant of law and forms of legal papers; that, at the time said papers were executed and delivered, he understood and believed, and still understands and believes, and is advised by his said counsel, that said two papers are to be construed together as one, and constitute an assignment to plaintiff of the estate, thereafter to be, and which has been, inherited by said John J. Hauenstein by devise in his father's will, to the amount and interest thereon of moneys advanced and procured to be advanced by plaintiff; that each and every said money advanced by plaintiff as above was in pursuance of the agreement and promise of said John J. Hauenstein, as contained in said paper, and under said understanding and belief, and not otherwise."

It is not alleged that there was any mistake in the drawing of the papers, or that they were not in the form that both parties intended they should be, or that there was any fraud in the matter. The law as laid down in Pitcher v. Hennessey, 48 N. Y. 415, 424, seems to be applicable. It is there said:

"Sometimes it happens that parties agree, as in the case above cited from Peters, to carry out their agreement by an instrument which, by their mistake of the law, will not effectuate their intention. In such a case equity will not reform the instrument, or substitute another instrument which will, in law, give effect to their intention, because they adopted and agreed upon the particular instrument; and equity will not compel them to execute an agreement which they never agreed to execute, and thus make an agreement for them."

See, also, 1 Story, Eq. Jur. § 113.

The plaintiff is not, I think, under the allegations of his complaint, in a position to claim reformation.

It is further claimed that the written instruments are sufficient to create a trust in the property for the benefit of plaintiff. The case of Hirsh v. Auer, 146 N. Y. 13, 40 N. E. 397, is cited as furnishing an analogous rule. There the father of plaintiffs, at his death, held a policy of insurance on his life, payable and which was paid to his sister. There was a parol agreement between the father and his sister that the latter, on receiving the money, would pay a certain portion thereof to the plaintiffs. It was held that the sister received the money impressed with a trust in favor of the plaintiffs, which they could enforce. Here the case is different. It is that of a party agreeing to pay a debt out of a certain fund or property of his own, when he gets it. If, in such case, there is no equitable lien or assignment, there is no trust.

There is another phase that may be considered. It is alleged that John J. Hauenstein, when he applied to the plaintiff for advances,

agreed to assign to the plaintiff his interest in his father's estate to an amount equal to the moneys advanced. This agreement has never been performed, and the question is whether the plaintiff, under his complaint, is in a position to compel specific performance, and in that way work out an equitable lien. In Williams v. Ingersoll, 89 N. Y. 519, it is said: "If a contract to assign be good in itself, and not inconsistent with public policy, it will take effect as an equitable assignment." Such a contract, though by parol, as the one in the present case evidently was, may be effectual. Id. 521; Risley v. Bank, 83 N. Y. 318. It is a maxim in equity that equity looks upon that as done which ought to have been done. 1 Story, Eq. Jur. § 64g. If the plaintiff had rested upon this agreement to assign, and made his advances in reliance upon it, it may be he would have been in a position to obtain relief. Instead of that being the case, the parties went on, and entered into a written agreement, complete in itself, and somewhat inconsistent with the prior agreement to assign. Under this written agreement, the advances were made. At least, it is so alleged, and the addition of the statement that the paper or papers amounted to an assignment does not affect the present question. He relied on the written instrument, and it evidently expressed, or was designed to express, the final arrangement. That being so, all prior negotiations would be deemed to be merged, and it would not be competent to show by parol any different prior arrangement (Thomas v. Scutt, 127 N. Y. 133, 140, 27 N. E. 961; Eighmie v. Taylor, 98 N. Y. 288), unless for the purpose of reformation. So that, as the case stands, I see no way for the plaintiff now to take advantage of the agreement to assign made prior to the written instrument. If the complaint contained allegations sufficient for reformation, other questions might arise that need not be considered here. It follows that the order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.