Submitted on briefs May 1, reversed with directions May 29, re-
hearing denied July 24, 1923.

# WESTERN STATES FINANCE CO. *v.* RUFF.

### (215 Pac. 501; 216 Pac. 1020.)

**Dower—Inchoate Right Incapable of Transfer.**

1. The inchoate right of dower is neither a title nor an estate
in land and is incapable of transfer by grant or conveyance, but
during its inchoate state it is an encumbrance upon the estate of
the husband or his grantees susceptible only of extinguishment.

**Dower—Inchoate Right cannot be Released to Stranger to Title.**

2. The separate deed of a married woman, given to bar an in-
choate right in lands conveyed by the husband, to be effective must
be executed to grantee of the husband or such grantee's heirs or
assigns, as under Section 10065, Or. L., it cannot be released to a
stranger to the title.

**Dower—Deed Deposited in Escrow Held Ineffectual to Bar Inchoate
Right Until Performance of Conditions.**

3. Where a deed releasing wife's inchoate right of dower and
deposited in escrow was not to be delivered or become operative
until grantee performed his agreement to pay the wife a named
sum, the deed so deposited was ineffectual to bar the inchoate right
of dower until performance of the condition on which it was in-
tended to be delivered, and the wife retained title to her inchoate
right as security for payment of the price named.

**Dower—Divorce Deprived Wife of Right of Dower.**

4. Where a deed releasing an inchoate right of dower was de-
posited in escrow and not to be delivered or become operative until
grantee paid grantor a named sum and was not effectual to bar the
inchoate right of dower until performance of the condition, a di-
vorce which grantor thereafter applied for and secured from her
husband extinguished and barred her dower and deprived her of
the right which the deed was designed to release.

**Liens—Rule as to Creation of Equitable Lien Stated.**

5. To create an equitable lien there must be actual or constructive
appropriation of the subject matter which confers a complete and
present right on the party meant to be provided for, even where the
circumstances do not admit of its immediate exercise.

**Liens—Contract to Release Dower not Construed to Give Equitable
Lien on Grantee's Interest in Lands as Security for Considera-
tion.**

6. Where a wife deposited deed releasing inchoate right of dower
to her husband's grantee to be delivered on payment by grantee of
a named sum, with no stipulation that grantee should hold the
property for any length of time or for any purpose, and no mention
of grantee's interest therein as security, a stipulation that, should

grantee desire to sell or convey his title at any time during the two-year period covered by the contract, such conveyance should not be made until his obligation was fully discharged, did not import or create an equitable lien on the land in the wife's favor to secure payment of the consideration promised her.

**Liens—Equity will not Substitute for Security Lost Where Defendant by Own Act Set in Motion Procedure Extinguishing Security.**

7. Where a wife executed deed releasing her dower which was deposited in escrow for two years or to take effect on grantee's payment of a sum named to the wife, and thereafter wife by divorce proceeding extinguishing such security, equity will not supply a substitute for the security so lost.

**Equity—Grantee, Having Notice of Grantor's Contract With Wife of Prior Grantor for Release of Dower, not Entitled to Equitable Relief Without First Doing Equity.**

8. Where the grantee of realty contracted with the wife of his grantor for the release of her inchoate right of dower for a certain sum, a subsequent grantee having notice of the contract, who failed to see that the payment was made, in the absence of satisfactory explanation, under the maxim that he who seeks equity must do equity, was not entitled to equitable relief in an action to determine adverse claims without first doing equity.

From Hood River: Fred W. Wilson, Judge.

In Banc.

REVERSED WITH DIRECTIONS.

For appellant there was a brief over the name of *Mr. S. S. Johnson.*

For respondent there was a brief over the name of *Messrs. Manning & Harvey.*

McCOURT, J.—Plaintiff commenced this suit against the defendant for the purpose of determining an adverse claim of the defendant to a parcel of real property in Hood River County. Plaintiff, in its complaint, alleged that it was then the owner in fee simple of the land referred to, and in the actual and exclusive possession thereof.

The answer of defendant admitted plaintiff's allegations of ownership and possession. As an affirma-

tive defense, defendant alleged in substance that on the twenty-second day of January, 1921, and for a long time prior thereto, the defendant was a married woman and the wife of G. C. Ruff; that during the marriage of defendant and G. C. Ruff, the latter was the owner of an undivided one-half interest in the real property in suit; that on the eighteenth day of November, 1919, without the knowledge, consent or acquiescence of defendant, and in fraud of her inchoate right of dower in said real property, G. C. Ruff, by a deed not signed or executed by defendant, conveyed the real property mentioned to W. R. Kaser; that on the twenty-second day of January 1921, Kaser, for the purpose of acquiring a deed from the defendant releasing her said inchoate right of dower, entered into a contract in writing with the defendant as follows:

"WHEREAS, heretofore G. C. Ruff, by proper instrument, conveyed unto W. R. Kaser, of Portland, Oregon, certain land by him owned in Hood River County, State of Oregon; and

"WHEREAS, the said G. C. Ruff was at the time said deed was made and is yet a married man, and his wife, under the laws of Oregon, has and holds a dower interest in and to said lands, which fact was known at the time of the transfer from the said G. C. Ruff to W. R. Kaser, and taken into consideration at the time; and

"WHEREAS, the said W. R. Kaser, as a holder of the legal title to said land, is desirous of obtaining the full fee simple title thereto, and has agreed with the said Fannie E. Ruff upon a sum of money to be paid her for her said dower interest in and to said lands, which sum is the sum of three thousand ($3,000) dollars and is to be paid on or before two years from date hereof with interest at seven (7%) per cent, thereon payable annually;

"Now THEREFORE, This AGREEMENT WITNESSETH:

"That the said Fannie E. Ruff, of Portland, Oregon, first party, does in consideration of the sum of one ($1.00) dollar to her in hand paid, the receipt of which is hereby acknowledged, sell to, and the said W. R. Kaser of Portland, Oregon, the second party, does hereby purchase of and from the said Fannie E. Ruff, all her interest of, in and to the following described real estate, situated in Hood River County, State of Oregon, to-wit:

[Description of land]

upon the following terms and conditions, to-wit: She, the said Mrs. Fannie E. Ruff, does hereby, concurrently with the execution of this instrument, make, execute, acknowledge and deliver a Warranty Deed, conveying to the said W. R. Kaser all of her right, title and interest of, in and to the lands above described, which are also described on said deed, and said deed has upon it $3.00 in Internal Revenue Stamps, covering the consideration for same; that said deed is, with this agreement, deposited with Andy Munger, in Multnomah County, State of Oregon, to be held until the said W. R. Kaser shall have, on or before two years from the date hereof, paid said Mrs. Fannie E. Ruff the sum of three thousand ($3,000.00) Dollars, with interest thereon payable annually at the rate of seven (7%) per cent per annum, and at the time when the said W. R. Kaser shall have made payment of said sum to the said Mrs. Fannie E. Ruff, or her representatives, then the deed deposited as aforesaid, with this agreement, is to be delivered to the said W. R. Kaser.

"It is further a condition of this agreement, that should the said W. R. Kaser, at any time during the period of two years covered hereby, desire to sell and convey his title to said lands above described, that such conveyance shall not be made or title transferred until the obligation to be paid hereunder is fully paid, satisfied and discharged. However, when said obligation is paid, whether by payment of cash by the said W. R. Kaser or upon sale of the lands

covered hereby, then the said deed from the said Mrs. Fannie E. Ruff to the said W. R. Kaser shall be delivered to the said W. R. Kaser.''

Defendant further alleged that the foregoing contract was executed and acknowledged by defendant and Kaser so as to entitle the same to be recorded, and the same was recorded in the records of deeds of Hood River County, on the twenty-seventh day of January, 1922; that concurrently with the execution of the foregoing contract, defendant executed a warranty deed containing the usual covenants of warranty, purporting to convey to Kaser all her right, title and interest in the real property, including dower and claim of dower, which deed was deposited in escrow with Andy Munger, in conformity with the requirements of the contract between defendant and Kaser; that on the second day of March, 1921, the defendant secured a divorce from her husband, G. C. Ruff; that thereafter on the twenty-third day of May, 1922, without the knowledge or consent of defendant, and without having paid her any part of the sum of $3,000 called for by the aforesaid contract, W. R. Kaser conveyed by deed to plaintiff all his estate in the lands in suit. Plaintiff received the aforesaid conveyance from W. R. Kaser, and the same was taken by plaintiff with notice and knowledge of the contract between defendant and Kaser.

Defendant averred that prior to the commencement of this suit, defendant demanded of Kaser and the plaintiff the sum of $3,000, with interest thereon as provided by the contract, and tendered the delivery of the deed deposited in escrow, as aforesaid, and that no part of said sum had been paid, and defendant now tenders a delivery of said deed into court.

Defendant prayed for relief as follows:

"1. For a decree that the defendant has a lien on the said lands for the sum of $3000.00 with interest thereon at 7% per annum from January 22d, 1921.

"2. That the Western States Finance Company be decreed to hold the hereinbefore described lands in trust for and subject to a lien in favor of the defendant for the sum of $3000.00 with interest thereon from January 22d, 1921, at 7% per annum, and that the defendant be decreed to have said lien on the said premises as of the date of the contract, Exhibit A.

"3. For an order for the sale of said lands to pay the defendant the sum of $3000.00 with interest thereon from January 22d, 1921, at the rate of 7% per annum * * ."

Plaintiff interposed a general demurrer to the affirmative defense of defendant, which was overruled by the court. Plaintiff declined to plead further, whereupon the court entered a decree in conformity with the prayer for relief contained in defendant's answer. Plaintiff appeals from that decree, and assigns the following errors:

"First. The Court erred in overruling the appellant's demurrer to the respondent's further and separate answer.

"Second. The Court erred in entering herein a decree in favor of the respondent, and against the appellant.

"Third. The Court erred in refusing to grant a decree as prayed for in the complaint."

1. The inchoate right of dower is neither a title nor an estate in land, and is incapable of transfer by grant or conveyance; during its inchoate state, such right is an encumbrance upon the estate of the husband or his grantees, susceptible only of extinguishment: 19 C. J. 493, 494.

2. The separate deed of a married woman, given for the purpose of barring an inchoate right of dower

in lands conveyed by her husband, does not pass any title. It operates only by way of estoppel or release. Such a deed, to be effective, must be executed to the grantee of the husband or to such grantee's heirs or assigns. An inchoate right of dower cannot be released to a stranger to the title: Section 10065, Or. L.; *Reiff* v. *Horst,* 55 Md. 42, 47; 19 C. J. 527.

3. By the terms of the contract between defendant and Kaser, the deed of the former to the latter, which was deposited in escrow, pursuant to that contract, was not to be delivered or to become operative, until Kaser had fully performed his agreement to pay defendant $3,000 and interest. The deed so deposited in escrow by defendant was ineffectual to bar her inchoate right of dower until the performance of the conditions, or the happening of the event, upon which it was intended to be delivered to Kaser: *Flanagan* v. *Great Central Land Co.,* 45 Or. 335, 340 (77 Pac. 485); *May* v. *Emerson,* 52 Or. 262 (96 Pac. 454, 1065, 16 Ann. Cas. 1129); *Foulkes* v. *Sengstacken,* 83 Or. 118, 128 (158 Pac. 952, 163 Pac. 311).

While she was yet the owner of her inchoate right of dower, notwithstanding her contract with Kaser and the deposit of the deed in escrow, defendant retained the title to that right as security for the payment of the price therefor, which Kaser agreed to pay her: *May* v. *Emerson, supra.*

4. The divorce which plaintiff applied for, and secured from, G. C. Ruff, her husband, extinguished and barred defendant's inchoate right of dower in the lands in question, and deprived her of the right which the deed to Kaser was designed to release: *Barrett* v. *Failing,* 11 U. S. 523 (28 L. Ed. 505, 4 Sup. Ct. Rep. 598, see, also, Rose's U. S. Notes).

Assuming, without deciding, that the debt and obligation of Kaser to defendant survived the decree of divorce, and was thereafter enforceable against Kaser, it is obvious that the power of defendant to recall her deed, or withhold the same from delivery to Kaser, became valueless as security for the debt of Kaser to defendant upon the entry of that decree. Thereafter defendant's deed would not in any way add to, or improve, Kaser's title to the lands. The right which the deed was intended to relinquish had been extinguished, and subsequent delivery of the deed would have been an idle performance.

The estate of Kaser in the lands having been relieved by the decree of divorce from the encumbrance of defendant's inchoate right of dower, the subsequent deed of Kaser to plaintiff conveyed title free from any claim of defendant, unless, as contended by her, a lien on Kaser's interest in the land was created in favor of the defendant by her contract with Kaser.

If Kaser defaulted in the payments agreed upon, plaintiff was entitled to recall her deed and to retain her contingent right in the property, unless otherwise deprived thereof. The nature of the right, as before noted, prevented it from being utilized as security in any other way; it did not permit of the reservation of a lien thereon that would survive an executed and operative relinquishment of that right by defendant.

Nothing passed to Kaser by virtue of the contract or deed executed by defendant, and by his deed to plaintiff, Kaser conveyed no right or interest in the property, which he had acquired from defendant. Consequently if any such lien exists, it must arise from some language of the contract, construed in the light of the circumstances and the situation of the

108 Or.—29

parties, which discloses an intention upon the part of Kaser to make his estate in the lands security for his debt and obligation to the defendant: Jones on Liens (3 ed.), § 32; Jones on Mortgages (7 ed.), 162; Pomeroy's Eq. Jur. (4 ed.), 1235; *Stone* v. *First Nat. Bank,* 100 Or. 528, 551 et seq., 556 (193 Pac. 1023, 197 Pac. 304, 198 Pac. 244); *Christmas* v. *Russell,* 81 U. S. 69, 84 (20 L. Ed. 762); *Dillon* v. *Barnard,* 21 Wall. 420 (46 L. Ed. 949, 22 Sup. Ct. Rep. 673); *Hossack* v. *Graham,* 20 Wash. 184 (55 Pac. 36); *American Savings & Trust Co.* v. *Lawrence,* 114 Wash. 245 (194 Pac. 971); *Silent Friend Mining Co.* v. *Abbott,* 7 Colo. App. 73 (42 Pac. 318); *Smith* v. *Rainey,* 9 Ariz. 363 (83 Pac. 463); *Wemple* v. *Hauenstein,* 19 App. Div. 552, 46 N. Y. Supp. 288; *Ford* v. *Garner,* 15 Ind. 299; *Knott* v. *Shepherdstown Mfg. Co.,* 30 W. Va. 790 (5 S. E. 266).

Defendant insists that the last paragraph of her contract with Kaser created an equitable lien upon Kaser's estate in the land, and that such lien encumbers plaintiff's title. Therein it was stipulated that should Kaser desire to sell or convey his title to the lands described at any time during the period of two years covered by the contract, that "such conveyance shall not be made, or title transferred, until the obligation to be paid hereunder is fully paid, satisfied and discharged."

5. To create an equitable lien, there must be an actual or constructive appropriation of the subject matter, which confers a complete and present right on the party meant to be provided for, even where the circumstances do not admit of its immediate exercise: *Christmas* v. *Russell, supra; Ford* v. *Garner, supra; Christmas* v. *Griswold,* 8 Ohio St. 558, 563.

It is not easy to find in the language of the con-

tract the essential elements, which the cases cited declare must be present in order to constitute an equitable lien. Except in the sentence last quoted, the contract contains no reference to Kaser's former title or estate in the land.

6. The words used in the contract cannot be construed as importing a transfer or conveyance of an interest or estate in the lands as security, or for any other purpose. Neither do they, by applying to them any of the usual rules of interpretation, express an intent to give a lien upon, or to pledge, any right or interest of Kaser in the lands as security for defendant's debt.

The claim of defendant is that the contract expresses an agreement and intent upon the part of Kaser to hold the title to the property as security for his debt to defendant. There is no stipulation or covenant in the contract to the effect that Kaser shall hold the property for any length of time or for any purpose, and no mention is made in the contract of Kaser's interest as security.

The provision of the contract upon which defendant relies for a lien, must have conferred upon her a complete and present right at the time the contract was made. It is clear that defendant had no lien on Kaser's interest, in the event that Kaser held the same but did not pay defendant within two years. It is also plain that defendant had no claim upon Kaser's interest, in the event of a sale and conveyance by Kaser after the two-year period without having paid defendant. Kaser then did not hold the title as security for the payment of his obligation to defendant, available to her in case of any default in payment. If he held the title as security at all, it was so held only in case he should sell and convey the

property within two years, and before he had discharged his obligation to defendant. Prior to such sale and conveyance by Kaser, there was no lien. A conveyance then was required to raise the lien. But then it would be too late, the title would have passed from Kaser and beyond the reach of any lien he might attempt to place upon it.

The contract did not vest defendant with a complete and present right in or to the property, in the nature of a lien or security. It simply fixed a contingent due date for Kaser's debt to defendant, earlier than that provided by the contract. A sale by Kaser at any time within two years, matured his debt to defendant as of that date. A conveyance by Kaser, without paying defendant, would have constituted a default in the payment of his obligation, entitling defendant to recall her deed, or commence an action against Kaser to recover her debt.

The construction above placed upon the contract in the instant case is supported by the well-considered opinion in the case of *Hossack* v. *Graham, supra.* The court in that case had under consideration, a mortgage in which the mortgagor agreed to deposit the proceeds of the cash sales of certain lands not covered by the mortgage, in a designated bank, for the purpose of establishing a sinking fund to provide for the payment of the mortgage indebtedness. The contention was made that the agreement mentioned created an equitable lien upon the land to which it related. After reviewing the authorities, the court said:

"And so with all the cases cited by the appellant, both those from the United States supreme court and the federal cases, and all other cases so far as we

have been able to ascertain, maintain the lien where it was stipulated that the property concerning which the agreement was made should constitute a lien for the payment of the obligation. In the case at bar there is no stipulation of this kind. If it had been the intention of the parties to have created a lien on * * these lands, * * it would have been an easy matter to have made that fact appear in the mortgage. * * And we do not think it can be said, under any authority, that, if this had been an independent contract, it would have created a lien on the property in dispute, or *that it would have been anything more than a naked promise to pay a given amount of money upon the happening of a certain contingency.*" (Italics ours.)

The case of *Smith* v. *Rainey, supra,* involved an agreement by the holder of the title to certain lands, that the proceeds of the sale of the lands should be applied upon his indebtedness to another. The first paragraph of the syllabus, written by the court, is as follows:

"To create an equitable mortgage or lien upon property for the payment of a debt, an intention to create such (lien) must be manifest, as distinguished from an intention to apply to the payment of the debt the proceeds from the sale of the property."

In *Knott* v. *Shepherdstown Mfg. Co., supra,* the manufacturing company executed a trust deed of all its property for the benefit of its creditors, without preference to any creditor. Plaintiff asserted a prior equitable lien upon the property covered by the trust deed. Plaintiff's contract with defendant contained the following covenant:

"And the said company further covenants that it will not give any voluntary lien of any character whatever, on any of its building, machinery or grounds, so long as this debt remains unpaid."

The court said:

"Of course this creates no lien on or pledge of any property. It is simply negative; an agreement not to do a particular thing. The creation of a lien is an affirmative act, and the intention to do such act cannot be implied from an express negative. It seems to me that both of these clauses of the obligations are simply personal covenants, for the breach of which the remedy must be sought in a court of law. They create, as we have seen, no lien upon real estate, and give the plaintiff no interest therein. They simply impose a personal obligation upon the covenantor. It is possible the plaintiff might, by injunction, have restrained the company from executing any trust deed in violation of its covenant * * ."

The case last cited is directly in point. There the covenant was not to give a lien until the debt was paid, while in the instant case, the covenant was not to convey at any time within two years, without paying the debt. As said in the above case, the intention to create a lien "cannot be implied from an express negative."

The cases cited by defendant fully recognize the rules sustained by the cases we have cited, and do not make any application of those rules contrary to the principles established by those cases.

There was nothing in the relations of the parties or in the subject matter or character of the transaction which charged the words of the contract with a broader, more comprehensive or different significance than they ordinarily and naturally possess, when used in a written instrument like the one in suit.

7. The terms of the contract which were intended to secure and protect defendant are found in the arrangement for the deposit of defendant's deed in escrow, and prohibiting its delivery to Kaser until his obligation to defendant was fully paid. If defendant

had refrained from securing a divorce, those terms were adequate for that purpose. So long as defendant remained the wife of G. C. Ruff, it would have been difficult to impair that security, and without her consent, it would have been impossible to deprive her thereof.

By her own act, defendant intentionally set in motion a procedure that extinguished the security which the contract provided for defendant. Equity will not supply a substitute for the security so lost.

It follows that the court erred in overruling plaintiff's demurrer and in giving a decree in favor of defendant. The decree of the Circuit Court is reversed, and the clerk of this court is directed to enter an order sustaining plaintiff's demurrer to defendant's further and separate answer, also a decree declaring that the defendant has no right, title, interest or estate in or to the said premises, and that the plaintiff is the owner in fee simple of the said premises and the whole thereof, free and clear of any right or claim of the defendant.

REVERSED WITH DIRECTIONS.

---

Rehearing denied with modifications to original opinion July 24, 1923.

ON PETITION FOR REHEARING.

(216 Pac. 1020.)

*Messrs. Manning & Harvey* for the petition.

*Mr. S. S. Johnson, contra.*

McCOURT, J.—Counsel for defendant have filed a petition herein, requesting a rehearing, or if such rehearing be denied, that the cause be remanded to the

Circuit Court, with leave to defendant to file an amended answer in the Circuit Court, followed by such further proceedings in the suit in that court as shall be proper.

We find nothing in the petition or in the additional authorities brought to our attention which entitles defendant to a rehearing, but upon further reflection, we are of the opinion that the cause ought to be remanded and defendant allowed to file an amended answer in the Circuit Court, if she desires to do so.

8. The record in its present state shows that the plaintiff purchased Kaser's interest in the land, title to which it now seeks to have quieted as against defendant, with notice of the contract between Kaser and defendant and the obligation of Kaser in that contract to pay his debt to defendant at the time of the conveyance to plaintiff. The failure of Kaser to make the payment, or any part thereof, and the omission of plaintiff to see that the same was made, together with the commencement of this suit by plaintiff shortly after it received a conveyance from Kaser, in the absence of satisfactory explanation, suggest that the consideration to be paid Kaser is dependent upon the outcome of this suit, or that plaintiff is aiding Kaser to escape his obligation to defendant. The position of plaintiff in either case would be inequitable. Plaintiff is seeking equitable relief, and must do equity before such relief will be awarded to it by a court of equity. The maxim applies that he who seeks equity must do equity: 5 R. C. L. 664.

The directions contained in the opinion herein which were ordered to be given to the Circuit Court upon remand of the cause are modified to conform to the foregoing observations. The decree of the Circuit Court is reversed and the suit remanded to the Cir-

cuit Court with directions to enter an order sustaining plaintiff's demurrer to defendant's further and separate answer, with leave to defendant to apply to the Circuit Court for permission to file an amended answer, and for such other and further proceedings as may be proper.

REHEARING DENIED AND ORIGINAL OPINION MODIFIED.