1179

PERPETUAL FEDERAL SAVINGS AND LOAN ASSOCIATION, a corporation organized under the Laws of the United States of America, Appellant v. F. Marshall WILLINGHAM, Jr., Judy W. Willingham, Southern Bank and Trust Company and Bankers Trust of South Carolina, of which Southern Bank and Trust Company and Bankers Trust of South Carolina are Respondents.

(370 S. E. (2d) 286)

Court of Appeals

*Harold P. Threlkeld,* Anderson, *for appellant.*

*O. G. Calhoun* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondents.*

Heard Feb. 17, 1988.

Decided June 27, 1988.

BELL, Judge:

Perpetual Federal Savings and Loan Association brought this action to foreclose a mortgage on certain real property of F. Marshall Willingham and Judy W. Willingham. As an incident to the foreclosure, Perpetual also sought to enforce payment of a separate debt represented by a note and Real Property Agreement executed by the Willinghams. Southern Bank and Trust Company and Bankers Trust of South Carolina, the holders of junior mortgages on the same realty, were joined as parties to the foreclosure. Southern and Bankers cross claimed for foreclosure of their respective mortgages, admitting that Perpetual held the first mortgage on the property, but asserting the priority of their mortgages over the Real Property Agreement. The master found that the debt of each creditor was proved and entered judgment against the Willinghams for the respective amounts. After the foreclosure sale, the master paid Perpetual's first mortgage, the expenses of sale, and attorneys' fees. A residual amount of $15,137.00 remained to be applied to the other debts. The master determined that the mortgages of Southern and Bankers held priority over Perpetual's Real Property Agreement. He ordered that the debt of Southern be paid in full and that a remaining balance of $3,524.92 be applied to Bankers' outstanding debt of $13,304.61. On appeal the circuit court affirmed the judgment of the master. Perpetual appeals from the decision of the circuit court. We affirm.

The question presented for our decision is whether the Real Property Agreement created a security interest in the Willingham's property. Unless it did, the ruling of the circuit court was correct.

Perpetual concedes that the Real Property Agreement does not constitute a legal or equitable mortgage of the property. However, it claims the instrument is "in the

nature of a mortgage" or creates an equitable lien on the property. To support this position, Perpetual relies on two clauses in the instrument. The first is a negative covenant that the Willinghams will not sell the property and will refrain from creating any lien or encumbrance on the property until the debt is paid in full. The second clause is a covenant to assign the rents and profits of the property to Perpetual in the event of a default.

The Agreement is cast entirely in the language of covenant. The Willinghams merely promise to do or not to do certain things. There is no language of grant or conveyance in the instrument. Nothing suggests the Willinghams are giving Perpetual rights in the property itself. The words "mortgage," "security," and "security interest" do not appear in the instrument. The word "lien" is used only once— where the Willinghams covenant that they will not place any lien or encumbrance on the property. In other words, the instrument expresses no intention to create an interest in the property.

## I.

An instrument creating mere contractual rights is ■■ not an instrument in the nature of a mortgage. *Arthur v. Screven*, 39 S. C. 77, 17 S. E. 640 (1893). The parties must intend to create a mortgage for a writing to be an instrument in the nature of a mortgage. *Thompson v. Hudgens*, 161 S. C. 450, 159 S. E. 807 (1931). In this case, the document grants no rights in the property itself. Moreover, Perpetual admits that it did not intend the Real Property Agreement to be a mortgage. Accordingly, we hold that the Agreement is not an instrument in the nature of a mortgage.

## II.

For an equitable lien to arise, there must be a debt ■ owing from one person to another, specific property to which the debt attaches, and an intent, expressed or implied, that the property serve as security for the payment of the debt. *Carolina Attractions, Inc. v. Courtney*, 287 S. C. 140, 337 S. E. (2d) 244 (Ct. App. 1985).

The creation of a lien is an affirmative act. The intent to create a lien cannot be implied from an express negative. *Equitable Trust Co. v. Imbesi*, 287 Md. 249, 412 A. (2d) 96 (1980); *Knott v. Manufacturing Co.*, 30 W. Va. 790, 5 S. E. 266 (1888). A covenant not to encumber or transfer property does not create an equitable lien on the property. *Equitable Trust Co. v. Imbesi, supra; Knott v. Manufacturing Co., supra; Manatee Federal Savings and Loan Association v. Pace*, 378 So. (2d) 95 (Fla. App. 1979); *Weaver v. Tri City Credit Bureau*, 27 Ariz. App. 640, 557 P. (2d) 1072 (1976). Likewise, a covenant to assign rents and profits confers no interest in the property itself. Such a covenant does not create an equitable lien. *Weaver v. Tri City Credit Bureau, supra; See Tahoe Nat'l Bank v. Phillips*, 4 Cal. (3d) 11, 92 Cal. Rptr. 704, 480 P. (2d) 320 (1971). For these reasons, we hold the Real Property Agreement did not create an equitable lien on the property.[1]

### III.

Finally, Perpetual argues that Southern and Bankers should be estopped to deny the priority of the Real Property Agreement, because the Agreement was recorded prior to their junior mortgages and they had notice of its terms. Since the instrument did not create any security interest in the property, it is immaterial for the purpose of establishing priorities that subsequent creditors had notice of its terms. *See Western States Finance Co. v. Ruff*, 108 Or. 442, 215 P. 501 (1923), *reh'g denied, opinion modified*, 108 Or. 598, 216 P. 1020 (1923) (covenant ineffective against subsequent purchaser with record notice); *Fisher v. Safe Harbor Realty Co.*, 38 Del. Ch. 297, 150 A. (2d) 617 (1959) (covenant ineffective against subsequent lien

---

[1] Perpetual argues that a lien was created because the Real Property Agreement was intended to better secure repayment of the note. A mere intention to take additional security does not create a lien. For example, a creditor who takes a guaranty or a surety intends to better secure his loan; but no one could plausibly argue that such an agreement creates a lien. It is purely contractual.

creditor with record notice.)[2] We hold that the doctrine of estoppel does not apply to this case.

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.

---

[2] The Uniform Commercial Code provides that a debtor may sell or encumber collateral given as security for a debt, notwithstanding a provision in the security agreement prohibiting him from doing so. *See* Section 36-9-311, Code of Laws of South Carolina, 1976. As a legislative expression of public policy, this statute casts doubt upon the general enforceability of "negative pledge" clauses against third parties.