[No. 3027. Decided November 18, 1898.]

ARCHIBALD HOSSACK, *Appellant,* v. JOHN W. GRAHAM, *Respondent.*

EQUITABLE LIEN—WHAT CONSTITUTES—PROMISE TO PAY OUT OF PAR-
TICULAR FUND.

An agreement in a mortgage that 25 per cent. of the money realized from sales by the mortgagor of the lands mortgaged, and also of certain other described lands, which are not included in the mortgage, shall be set apart as a fund for the payment of the mortgage debt, does not create an equitable lien in favor of the mortgagee or his assigns against the lands not expressly mortgaged.

Appeal from Superior Court, Pierce County.—Hon. WM. HICKMAN MOORE, Judge.   Affirmed.

*Campbell & Powell,* for appellant:

The doctrine may be stated in its most general form, that every express executory agreement in writing whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign, or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands not only of the original contractor, but of his heirs, executors, voluntary assignees, and purchasers or incumbrancers with notice. *Hauselt v. Harrison,* 105 U. S. 401 (26 L. ed.

1075); *Gregory v. Morris,* 96 U. S. 619 (24 L. ed. 741); *Riddle v. Hudgins,* 58 Fed. 491; *Badgerow v. Manhattan Trust Co.,* 64 Fed. 931; *Ketchum v. St. Louis,* 101 U. S. 306 (25 L. ed. 999).

*Doolittle & Fogg,* for respondent:

An agreement to pay a certain debt out of the proceeds of sale of certain specified real or personal property when sold, there being no change of possession or control thereof, creates neither an equitable lien nor mortgage upon the property out of the proceeds of which the money was promised to be paid; nor is it an assignment, equitable or otherwise, of the fund itself or any part thereof. *Fairbanks v. Welshans,* 75 N. W. 873; *Rogers v. Hosack's Ex'rs,* 18 Wend. 319; *Gibson v. Stone,* 43 Barb. 285; *Silent Friend Mining Co. v. Abbott,* 42 Pac. 318; *Hamilton v. Downer,* 152 Ill. 651; *Stewart v. Hopkins,* 30 Ohio St. 502; *Dillon v. Barnard,* 21 Wall. 430 (22 L. ed. 673); *Cook v. Black,* 54 Iowa, 694; *Hall v. Jackson,* 20 Pick. 194; *Pearce v. Roberts,* 27 Mo. 179; *Gibson v. Decius,* 82 Ill. 306; *Wood v. Mitchell,* 17 N. Y. Supp. 782; *Trist v. Child,* 21 Wall. 441 (22 L. ed. 623); *Ford v. Garner,* 15 Ind. 298; *Harrison v. Hobbs,* 1 Bibb, 152; *Wemple v. Hauenstein,* 46 N. Y. Supp. 288; *Barrington v. Evans,* 3 Younge & C. Exch. 384; 1 Jones, Liens, §§ 32, 51, 52; 3 Pomeroy, Equity Jurisprudence, § 1284, notes and cases cited; 2 White & Tudor, Leading Cases, 1567, 1644, 1654, 1655, 1657, 1658, notes and cases cited.

The opinion of the court was delivered by

DUNBAR, J.—This was an action to foreclose a mortgage upon certain lots and lands therein mentioned, and upon certain other lots mentioned in the aforesaid mortgage, concerning which a special agreement was made. A demurrer to the complaint was sustained, and, the

plaintiff electing to stand upon his demurrer, judgment was entered and the case was brought to this court.

The mortgage, so far as one portion of the land described therein is concerned, is the ordinary mortgage, but, in addition, the following clause occurs:

" And the said party of the first part, for itself, its successors and assigns, does hereby covenant and agree, to and with the said party of the second part, its successors and assigns, that twenty-five per cent. of the sales of all the property of the Excelsior Park Land Company, which shall hereafter be made, shall be paid by the said party of the first part, its successors or assigns, into the Tacoma National Bank, in the city of Tacoma, in cash not to exceed sixteen thousand dollars ($16,000) for each and every year during the life of this mortgage, for the purpose of establishing a sinking fund to provide for the payment of the principal amount of the debt secured by this mortgage, to-wit, eighty thousand dollars ($80,000), said cash payments to be invested in interest bearing securities to be approved by the officers of said Tacoma National Bank; the remainder of the property of said party of the first part, which shall not be covered by this mortgage, and out of the sales of which, in addition to those of the property covered by this mortgage as above mentioned, the said cash payments shall be deposited in the Tacoma National Bank aforesaid, is described as follows, to-wit:"

And then follows a description of the property covered by the clause referred to. It may be said, in passing, that the mortgage was given by the Excelsior Park Land Company to the Mason Mortgage Loan Company, and that the notes which were secured by the mortgage had been sold by the said Mason Mortgage Loan Company before maturity, and that at the time of the commencement of this action the said company had no interest in said notes, or any of them.

The respondent, Graham, has an interest in lots which are described under the twenty-five per cent. clause above

set out, said lots not being any portion of the land regularly mortgaged. At the time the respondent filed and served his demurrer, he also filed and served a disclaimer, disclaiming any interest in the mortgaged property other than that affected by the twenty-five per cent. clause. The appellant was the assignee of the Mason Mortgage Loan Company, which company had taken a mortgage on the land embraced in the twenty-five per cent. clause, subsequent to the sale by them of the original notes. The demurrer stated all the statutory grounds, but it is conceded that there is but one proposition in the case to be determined here; at all events, with the view we take of that proposition, a discussion of the other points argued by the appellant becomes unnecessary, and the case hangs upon the construction of what is termed the "twenty-five per cent. clause" in the mortgage, the contention of the appellant being that the twenty-five per cent. clause created a mortgage to the extent of twenty-five per cent. of the property affected by it. It may be here stated that the mortgage was duly and formally recorded in the proper county. It is insisted by the appellant that the language of the clause shows that the mortgagor intended to absolutely mortgage certain of its properties, and twenty-five per cent. of the proceeds of the sale of certain of its other property, as security for the $80,000 and interest; while the construction placed upon it by the respondent is to the effect that no lien is created upon the lots described under the twenty-five per cent. clause, but that it is simply an agreement to pay or appropriate money, which is personal between the parties to the agreement. We think the latter construction is the correct one. In support of appellant's contention is cited § 1235, Pomeroy's Equity Jurisprudence, which is as follows:

" The doctrine may be stated in its most general form, that every express executory agreement in writing, where-

by the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice."

This statement of the law is in harmony with universal authority, but we do not see that it can be made applicable to appellant's interest in this case, for the statement assumes the very question which is in dispute here, viz., whether or not the party promised to convey or assign or transfer this property as security. It is the intention of the parties to the contract, which is to be determined from the phraseology of the instrument. Further on in the same section Mr. Pomeroy says that the agreement, before it can be determined to constitute a lien, "must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given or transferred as security for the obligation." And so with § 1048, quoted also by appellant, to the effect that—

" Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, . . . then the rule is universal that such heir, devisee, successor or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary."

The same fact is assumed, viz., that the property is already impressed with, or subject to, a trust. The same thing may be said of the quotation from Jones on Mort-

gages, § 162, for while it is no doubt true that it is not necessary that the contract should be, in express terms, a security, for the reason that equity will frequently imply a security from the nature of the transaction between the parties, yet, according to Mr. Jones, the essence of the contract is the intention of the parties to create a security.

In the case of *Hauselt v. Harrison,* 105 U. S. 401, A. entered into a written contract with B., whereby, in consideration of moneys advanced by the latter for the purchase of skins, he agreed that he would tan, finish and deliver them to B. B., in consideration of a commission on sales, and a further percentage to cover insurance, storage and labor, agreed to sell them and put the proceeds, less his commissions and advances, at the disposal of A. It was held that A. had not an unqualified property in them, but they were subject to a charge in the nature of a mortgage in favor of B., which was binding on the parties and A.'s assignee in bankruptcy. But that case was decided upon the ground that it was especially agreed that the skins should be considered as security for refunding the moneys advanced, and the court, in its opinion, says:

" The clause providing for security must be held to mean something; and it declares that the skins themselves, before delivery of possession to Hauselt under the contract, for purposes of sale, shall be considered as security."

In *Gregory v. Morris,* 96 U. S. 619, it was decided that the rule of the common law that the lien of the vendor of personal property to secure the payment of the purchase money is lost by the voluntary and unconditional delivery of the property to the purchaser, does not prevent the parties from contracting for a lien which, as between themselves, will be good after delivery. In that case Morris and Gregory executed a written contract for the

sale to the latter, in accordance with the schedule of prices in gold, of a large number of cattle, and the contract provided that Morris was to retain a lien on the cattle until the purchase money, amounting to nearly $8,000, should be paid, and for the purpose of preserving said lien, authorized him to designate some person as his agent, to go along with, and retain possession of, the cattle.

And so with all the cases cited by the appellant, both those from the United States supreme court and the federal cases, and all other cases so far as we have been able to ascertain, maintain the lien where it was stipulated that the property concerning which the agreement was made should constitute a lien for the payment of the obligation. In the case at bar there is no stipulation of this kind. If it had been the intention of the parties to have created a lien on a one-fourth interest in these lands embraced in the second description, it would have been an easy matter to have made that fact appear in the mortgage. But it is especially stated that this property shall not be covered by this mortgage, and it seems to us that the language simply indicates a separate agreement in relation to the property falling under the second description. The fact that the agreement is incorporated in the same instrument with the mortgage gives it no other or different legal effect than it would have, had it been an agreement detached from and independent of the mortgage contract; and we do not think it can be said, under any authority, that, if this had been an independent contract, it would have created a lien on the property in dispute, or that it would have been anything more than a naked promise to pay a given amount of money upon the happening of a certain contingency.

In discussing the doctrine of equitable assignments, in his work on Equity Jurisprudence (§ 1284, and notes), Mr. Pomeroy says:

" The order on a future fund which thus operates as an equitable assignment should be carefully distinguished from a *mere promise* to appropriate an existing or future fund in discharge of an obligation, or a mere promise to give an order on a fund, and the like."

In this case there was no order on a future fund, but it was a mere promise to appropriate a future fund in discharge of an obligation. See, also, Beach, Modern Equity Jurisprudence, § 291.

A case which is parallel with the one at bar, and which is well considered, is *Silent Friend Min. Co. v. Abbott,* 7 Colo. App. 73 (42 Pac. 318). There it was held that a promise to pay a debt out of proceeds of ore to be mined was not an equitable assignment of such proceeds. In that case the plaintiffs conveyed to the company a perpetual assignment and right of way through a tunnel upon certain mining claims belonging to them, to be used by the company for the development and working of its own mining properties, and also the use of the plaintiffs' roads, ore bins and shops, for the same purpose, in consideration of which the company agreed to pay to the plaintiffs $6,000,—$3,000 payable at the time of the execution of the contract, and the residue out of the proceeds of the first ore shipped from the company's property. The money not being paid, the action was brought involving the construction of the contract, and the court, in rendering its opinion, said:

" The agreement gave the plaintiffs no interest in the money as such. It was simply a promise by the company that, when it received the money, it would apply it in payment of the debt, and until it should do so no title in the money could pass to the plaintiffs. If it failed in the fulfillment of its promise, the plaintiffs' remedy was by an action at law against the company for breach of contract;"—

citing *Bradley's Case,* Ridg. t. Hardw. 194, where the

chancellor held that a promise to pay the plaintiff's demand out of the special debt did not create a lien upon the debt; citing also *Christmas' Adm'r v. Griswold,* 8 Ohio St. 558, where the agreement was that Christmas should pay Fassett $7,435 out of the first money he received from sales of certain lands, etc. The court said that the contract could not operate as an equitable assignment, and created no lien in favor of Fassett's estate upon Christmas' share of the proceeds of the land; quoting the following from Hare & Wallace's notes to Leading Cases in Equity:

" It is necessary, moreover, in order to constitute the assignment, either in law or equity, that there should be such an actual or constructive appropriation of the subject-matter assigned as to confer a complete and present right on the assignee, even where the circumstances do not admit of its immediate exercise."

In *Christmas v. Russell,* 14 Wall. 69, it was decided that an agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment. The distinction between an order on a fund and an agreement to pay is thus tersely stated by Justice SWAYNE in *Trist v. Child,* 21 Wall. 441:

" It is well settled that an order to pay a debt out of a particular fund belonging to the debtor gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. A part of the particular fund may be assigned by an order, and the payee may enforce payment of the amount against the drawee. But a mere agreement to pay out of such fund is not sufficient."

In fact, an examination of the many authorities satisfies us that there are no American cases, at least, that sustain the appellant's contention in this case that a lien was created upon the lands in controversy.

The demurrer to the amended complaint was properly sustained, and the judgment will therefore be affirmed.

SCOTT, C. J., and REAVIS, ANDERS and GORDON, JJ., concur.