[No. 15898.   Department Two.   January 20, 1921.]

AMERICAN SAVINGS BANK & TRUST COMPANY, *Appellant,*
v. ALFRED LAWRENCE *et al., Respondents,* UNIVERSITY ·
PHARMACIES, INCORPORATED, *Defendant.*[1]

LIENS (1)—EQUITABLE LIENS—REQUISITES. An equitable lien not
created by express terms, must arise by necessary implication from
the terms of the agreement construed with reference to the attend-
ant circumstances; and none was intended, where mortgages had
been foreclosed and in consideration of deeding the property back
to the mortgagor and accepting new mortgages, the mortgagor
agreed to have deeded to himself certain described property then
held in trust for him by relatives, which he agreed to hold while
indebted on the mortgages, further agreeing to apply on his in-
debtedness any proceeds that he might realize on the sale of the
property.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered December 1, 1919,
upon findings in favor of defendants, in an action to
foreclose an equitable mortgage.   Affirmed.

*Farrell, Kane & Stratton,* for appellant.

*Milo J. Loveless, Peters & Powell,* and *Marion
Edwards,* for respondents.

MAIN, J.—The purpose of this action, so far as the
appeal is concerned, was to foreclose an alleged equit-
able lien claimed to have been created by a written in-
strument.   From a judgment denying foreclosure, the
plaintiff appeals.

The appellant, on and prior to November 28, 1914,
when the writing in question was executed, was a cor-
poration engaged in the banking business, and for con-
venience it will be referred to as the bank.   Prior to
this time, one Alfred Lawrence had executed and de-
livered to the bank certain mortgages which had been

[1] Reported in 194 Pac. 971.

foreclosed, and sheriff's deed would soon be obtained. Lawrence, prior to this time, had conveyed his property not covered by the mortgages to his children and to his former wife, but these conveyances vested only the legal title in them and the property was held in trust for him. Not wishing to lose the property foreclosed on, Lawrence proposed to the bank that, if it would deed back to him the property covered by the mortgages which had been foreclosed, he would give new mortgages upon the same property covering his indebtedness and he would also have reconveyed to him the property which stood in the name of his wife and children. This proposition was accepted by the bank and reduced to writing in the form of a letter, this letter being the document alleged by the bank to be an equitable mortgage. The letter is as follows:

"Seattle, Washington, November 28th, 1914. American Savings Bank & Trust Company, Seattle, Washington. In regard to rearranging my affairs with the bank, I propose as follows: If you will deed back to me the three pieces you now have foreclosed on and take back a separate mortgage on each piece, I will have deeded back to me the following described property, now standing in the names of my two sons and their mother in trust for me, to wit: (Description.)

"I also agree to hold said property in my own name while indebted to your bank, and if I succeed in selling any of the within mentioned properties to apply as much of it as I am able on my indebtedness to the bank.

"Alfred Lawrence.

"It is hereby agreed on behalf of the American Savings Bank & Trust Company that, upon compliance with the above agreement, said bank will take three new mortgages covering the indebtedness of said Lawrence and release the foreclosure heretofore had against him.

"American Savings Bank & Trust Company. By J. P. Gleason, Manager."

In accordance with this agreement, Lawrence had the properties mentioned therein conveyed to him and the bank deeded back to him the properties on which it had foreclosed. Lawrence executed new mortgages to the bank covering these latter properties, but not the ones mentioned in the letter. The bank immediately recorded the mortgages, but the letter was not recorded until April 26, 1916, approximately a year and a half after the day of the transaction. On August 14, 1918, Lawrence deeded to his former wife certain of the property described in the letter; and on August 28, 1919, Mrs. Lawrence mortgaged the property to the respondents C. W. Arland and wife, which mortgage was recorded on August 28, 1919.

In November, 1918, the bank began foreclosure of the mortgages given it by Lawrence on November 28, 1914, and alleged that, as additional security for the indebtedness covered by these mortgages, Lawrence had signed and delivered the letter set forth above and that, by reason of such letter, the property mentioned therein was subject to a prior lien of the bank for the payment of Lawrence's indebtedness. As already indicated, the trial court held that the letter did not create an equitable lien.

The first, and as we believe the controlling, question is whether by the letter an equitable lien was created. In considering this question it will be assumed, but not decided, that the recording of the letter would operate as constructive notice to subsequent purchasers and incumbrancers. From the facts stated, it appears that the respondents Arland and wife took their mortgage subsequent to the time when the letter was made a matter of record.

It is a general rule that, where an express executory agreement in writing sufficiently indicates an inten-

tion to make the particular property described therein
a security for a debt or obligation, an equitable lien is
created upon the property so indicated which is en-
forcible against the lands, not only while in posses-
sion of the original contractor, but also as against in-
cumbrancers with notices. 3 Pomeroy's Eq. Jur. (4th
Ed.), § 1235; 19 R. C. L. 273; 25 Cyc. 665.

The agreement in question does not expressly pro-
vide that the property shall be held as security for
the indebtedness or that the bank shall have a lien
thereon. If such a lien exists, it must, therefore, arise
by implication. It seems to be the doctrine of the
United States supreme court, as stated in *Walker v.
Brown*, 165 U. S. 654, that an intention to create such
a lien, when it is not created by express terms, must
arise by necessary implication, from the terms of the
agreement construed with reference to the situation of
the parties and the attendant circumstances.

In *In re Springer's Estate*, 97 Wash. 546, 166 Pac.
1134, the court construed a power of attorney, which
it was claimed established an equitable lien upon real
estate. It was there held that the words,

"my said interest in said estate to be received by my
said attorney and held by him in trust as collateral to
secure payment of any promissory notes or renewals
that I may at any time owe to the First National Bank
of Crestline, Ohio,"

was not sufficient to create an equitable lien. In the
case of *Hossack v. Graham*, 20 Wash. 184, 55 Pac. 36,
a mortgage had been made which covered certain prop-
erty and was in the usual form for real estate mort-
gages. There was an additional clause in the mort-
gage which provided that the mortgagor should pay
twenty-five per cent of the money received from sales
of all the property which it should thereafter make to
a certain bank to be applied upon the indebtedness cov-

eréd by the mortgage. The property covered by this latter clause was not included in the property mortgaged, though as already stated it was a paragraph in the same instrument. The question arose as to whether by this clause the parties intended to create an equitable lien. The holding in that case seems to us controlling here. It was there said:

"It is insisted by the appellant that the language of the clause shows that the mortgagor intended to absolutely mortgage certain of its properties, and twenty-five per cent of the proceeds of the sale of certain of its other property, as security for the $80,000 and interest; while the construction placed upon it by the respondent is to the effect that no lien is created upon the lots described under the twenty-five per cent clause, but that it is simply an agreement to pay or appropriate money, which is personal between the parties to the agreement. We think the latter construction is the correct one. In support of appellant's contention is cited § 1235, Pomeroy's Equity Jurisprudence, which is as follows:

" 'The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice.'

"This statement of the law is in harmony with universal authority, but we do not see that it can be made applicable to appellant's interest in this case, for the statement assumes the very question which is in dispute here, viz., whether or not the party promised to convey or assign or transfer this property as security.

It is the intention of the parties to the contract, which is to be determined from the phraseology of the instrument. Further on in the same section Mr. Pomeroy says that the agreement, before it can be determined to constitute a lien, 'must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given or transferred as security for the obligation.' And so with § 1048, quoted also by appellant, to the effect that—

" 'Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee  .  .  .  . then the rule is universal that such heir, devisee, successor or other voluntary transferee, or such purchaser with notice, acquires and holds the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary.'

"The same fact is assumed, viz., that the property is already impressed with, or subject to, a trust. The same thing may be said of the quotation from Jones on Mortgages § 162, for while it is no doubt true that it is not necessary that the contract should be, in express terms, a security, for the reason that equity will frequently imply a security from the nature of the transaction between the parties, yet, according to Mr. Jones, the essence of the contract is the intention of the parties to create a security.  .  .  .  .

"And so with all the cases cited by the appellant, both those from the United States supreme court and the Federal cases, and all other cases so far as we have been able to ascertain, maintain the lien where it was stipulated that the property concerning which the agreement was made should constitute a lien for the payment of the obligation. In the case at bar there is no stipulation of this kind. If it had been the intention of the parties to have created a lien on a one-fourth interest in these lands embraced in the second description, it would have been an easy matter to have made that fact appear in the mortgage. But it is especially stated that this property shall not be cov-

ered by this mortgage, and it seems to us that the language simply indicates a separate agreement in relation to the property falling under the second description. The fact that the agreement is incorporated in the same instrument with the mortgage gives it no other or different legal effect than it would have, had it been an agreement detached from and independent of the mortgage contract; and we do not think it can be said, under any authority, that, if this had been an independent contract, it would have created a lien on the property in dispute, or that it would have been anything more than a naked promise to pay a given amount of money upon the happening of a certain contingency.''

The only difference between that case and the present is that here there was an express agreement on the part of Lawrence to hold the property covered by the letter in his own name, while there there was no such express language. But this difference does not make a controlling distinction. The purpose of the language requiring Lawrence to hold the title in his own name while he was indebted to the bank is plain when it is recalled that, prior to the transaction, the legal title to the property was in his former wife and his children, he only having a trust estate. The bank doubtless considered that it was to its advantage that the legal title to the property remain in its debtor during the time that the indebtedness existed.

In the *Hossack* case, while it was not expressly so provided, it was undoubtedly contemplated by the parties that the title to the property mentioned in writing would remain in the name of the mortgagor until it was sold or the indebtedness paid. If it had been the intention of the bank and Lawrence to have created an equitable lien, it would have been easy for them to have so stated in the writing. The purpose of the writing, apparently, was to give Lawrence an oppor-

tunity to pay his indebtedness to the bank and also avoid the necessity of the bank's taking and holding real estate until it could dispose of it in due course.

The case of *Pinch v. Anthony*, 8 Allen (Mass.) 536, is distinguishable because there the writing expressly provided that the indebtedness should be a "charge" on the estate of the parties executing the instrument. The language there used in itself indicated an intention to create an equitable lien. There is no corresponding or similar language in the writing which we are called upon to construe in this case.

The judgment will be affirmed.

HOLCOMB, MOUNT, MITCHELL, and TOLMAN, JJ., concur.