[No. 25698. Department One. June 17, 1935.]

C. R. SNEESBY, *Individually and as Executor, Respondent*, v. JOE LIVINGTON, *Defendant*, F. W. WICHMAN, *Appellant*.[1]

*P. C. Kibbe,* for appellant.

*Jas. A. Dougan,* for respondent.

BEALS, J.—Plaintiff sued J. Livington, asking judgment for the sum of $253 and interest upon a contractual obligation. At the same time, plaintiff caused a writ of garnishment to issue, directed to R. D. Bodle Company, a corporation. The garnishee answered, admitting an indebtedness to the defendant, and, in the course of the litigation, paid into the registry of the court $272.63, which it seems to be admitted was the amount it owed.

Thereafter, F. W. Wichman intervened in the action, claiming, pursuant to contracts between himself and Mr. Livington, the money paid into court by the garnishee. Plaintiff denied intervener's claim, raising

[1] Reported in 46 P. (2d) 733.

an issue as between plaintiff and intervener as to the right to the fund in the registry of the court. Defendant Livington answered plaintiff's complaint, but as to any issue which he raised the court found in plaintiff's favor, and, as defendant did not appeal, we are not concerned with the controversy between him and plaintiff.

The action proceeded to trial only upon the issue raised between plaintiff and intervener. The court entered findings of fact and conclusions of law in favor of plaintiff, and from a judgment awarding the fund in controversy to the plaintiff, intervener has appealed.

Appellant testified that he had entered into two written contracts for the sale of land to Livington. One of these contracts bears date March 17, 1932, and is marked "canceled", appellant testifying that it was replaced by the second contract. The second bears date February 16, 1933, and by it appellant agreed to sell to Mr. Livington, who also by the contract agreed to buy, a tract of land; the contract, after the legal description of the property, continuing:

"Second party shall plow all land on said premises that can be plowed during the season of 1933, and will put half of this into strawberries in the spring of 1934 and the other half in the spring of 1935.

"The unpaid purchase price is to be paid by paying each year one-half of the receipts for the berries (less cost of picking them) until the entire purchase price has been paid.

"Party of the second part shall put in and carefully cultivate ten acres of strawberries in 1932 (which has already been planted) and half of the balance of plowable land in the spring of 1934 and the balance in the spring of 1935."

It clearly appears from the record that the fund garnisheed by respondent was the proceeds of berry

crops raised by Mr. Livington during the years 1932 and 1933, which crops were not subject to the contract above referred to between Livington and appellant, which refers only to crops to be raised during the years 1934 and 1935.

It is undoubtedly true that Mr. Livington was indebted to appellant, but the contract between these parties contains no assignment of the fund in the hands of the garnishee, nor does the record contain any other writing whatsoever which concerns the relations between appellant and Mr. Livington. Appellant testified that he had a verbal understanding with Mr. Livington to the effect that the latter would repay appellant for certain advances and liquidate certain other indebtedness when appellant should receive the proceeds realized from his strawberries. Appellant admitted that the contract upon which he relies as an assignment from Livington to himself was oral, and the only writings in evidence are the two contracts above referred to. Appellant also admitted that he never notified R. D. Bodle Company that he had any claim against the fund in its possession.

The *bona fides* of the indebtedness sued on by respondent is not challenged, and in the absence of evidence showing some actual assignment to appellant of the fund in the hands of the garnishee, respondent, by his writ of garnishment, gained a preference right to this fund, which right became absolute upon the entry of judgment in respondent's favor against Livington.

The evidence discloses no equitable right in appellant which can give him a preference over respondent's claim under his garnishment. In the case of *Hossack v. Graham*, 20 Wash. 184, 55 Pac. 36, this court discussed at length the doctrine of equitable assignments, the court quoting from the opinion of the supreme court of the United States in the case of *Trist*

*v. Child,* 88 U. S. 441. This court held that a provision in a mortgage, to the effect that a percentage of the money realized by the mortgagor from sales of the mortgaged property and from other lands should be set apart as a fund for the payment of the mortgage debt, did not create an equitable lien in favor of the mortgagee as against lands not expressly mortgaged.

In the later case of *Nickerson v. Hollet,* 149 Wash. 646, 272 Pac. 53, this court, referring to a claim based upon an alleged equitable assignment, used the following language:

"The primary and controlling question is one of fact. It is admitted that there was no written or legal assignment of the claim to the appellants, but it is contended that the facts warrant a holding that there was an equitable assignment.

"The law as to what constitutes an equitable assignment is not in doubt, and is well stated as follows:

" 'In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee. The intention of the assignor must be to transfer a present interest in the debt or fund or subject matter; if this is done the transaction is an assignment; otherwise not.' 5 C. J. 909.

" 'The assignor of a chose in action must part with the power of control over the thing assigned; if he retains control it is fatal to the claim of the assignee.' 5 C. J. 912.

"See, also, *Hossack v. Graham,* 20 Wash. 184, 55 Pac. 36.

"While the evidence is not free from conflict, yet it rather clearly appears that the assignor did not part with control over the account in question, and that the assignees did not even assume to exercise control over it until after the written assignment had been made to the bank, and that no present interest passed to them. The trial court so found, and further found that there was here nothing more than an expressed intention to pay out of a particular fund."

In the case of *Christmas v. Russell,* 81 U. S. 69, the supreme court of the United States laid down the rule that an agreement to pay out of a particular fund, however definite, is not an equitable assignment. The court said:

"The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund — any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fund-holder can safely pay, and is compellable to do so, though forbidden by the assignor."

In the case at bar, we find no assignment, no transfer of title, nor any definite appropriation, either in whole or in part, of the fund in the hands of the garnishee to the payment of appellant's claim against Mr. Livington. Respondent, then, by his writ of garnishment obtained a prior claim upon this fund, and the judgment of the trial court awarding the fund to respondent, less certain items with which we are not here concerned, was correct, and is hereby affirmed.

MILLARD, C. J., MAIN, TOLMAN, and GERAGHTY, JJ., concur.