[No. 27270. Department One. February 20, 1939.]

W. P. FULLER & COMPANY, *Appellant,* v. SHEBLE CONSTRUCTION COMPANY *et al., Respondents.*

PIONEER SAND & GRAVEL COMPANY, *Appellant,* v. SHEBLE CONSTRUCTION COMPANY *et al., Respondents.*[1]

[1]Reported in 87 P. (2d) 287.

*Wayne W. Keyes, Wright, Jones & Bronson, Raymond G. Wright,* and *Clark A. Eckart,* for appellants.

*Charles T. Peterson* and *Hayden, Metzger & Blair,* for respondents.

JEFFERS, J.—Two separate actions were brought, one by W. P. Fuller & Company, a corporation, and the other by Pioneer Sand & Gravel Company, a corporation, praying for judgment against the defendants, and that all money paid to Hansen & Rowland, Inc., a corporation, as trustee, be declared subject to an equitable lien for material furnished under a general contract entered into between defendant Sheble Construction Company, a corporation, and the state of Washington,

acting by and through the state capitol committee. Parties defendant were the same in each case.

The defendants Maryland Casualty Company, a corporation, and Glens Falls Indemnity Company, a corporation, joined in one appearance. Defendants Hansen & Rowland, Inc., a corporation, as trustee, and Hansen & Rowland, Inc., a corporation, jointly appeared, and defendant The National Bank of Washington, Tacoma, appeared separately.

The general demurrers of these defendants to the second amended complaint in each case were sustained, and each of the plaintiffs having elected to stand on its pleading, judgments were entered dismissing the action as to these defendants. An appeal was taken by the plaintiff in each case from the judgment entered.

It has been stipulated by the parties to these appeals that the questions presented by the demurrers in the lower court were identical, and that the two cases shall, before this court, be considered as one, and the briefs filed shall be applicable to each of the two cases. Our reference in this opinion will be to the transcript in case No. 17327 in the court below, wherein W. P. Fuller & Company, a corporation, is plaintiff.

It will be seen that the final question which we must determine is whether or not the second amended complaint states a cause of action against the respondents. In this connection, appellant raises three questions:

(1) Does an assignment of all funds due, or to become due, under a public works contract which provides:

"It is understood and agreed that the funds to be paid the assignee under this assignment are subject to a prior lien (to laborers, materialmen and subcontractors),"

create a lien in favor of such claimants against the funds paid, or to be paid, under the assignment, where no statutory claim of lien has been filed?

(2) Where an insolvent contractor assigns and conveys its assets to a trustee, who agrees to use such funds for the payment of the contractor's debts, does such an act on the part of the contractor constitute an assignment for the benefit of creditors?

(3) Can a creditor maintain an action upon a trust agreement entered into between a contractor, his surety, the financing bank, and a named trustee, which provided that the funds of the trust should be subject to the proviso hereinbefore referred to in the first question presented?

In view of the fact that we believe the second amended complaint must stand or fall upon the interpretation given to the provision referred to in the first question presented by appellant, which provision was contained in the general construction contract and assignment thereof, which were referred to and made a part of the complaint, we shall set out only so much of the complaint as we deem necessary to a determination of the questions raised.

Sheble Construction Company, a corporation, on the 5th day of February, 1936, entered into six separate construction contracts with the state of Washington, one of which was for the construction of the Public Lands-Social Security building, in Olympia, and it was on this job that appellant, as a subcontractor, furnished the material which is the basis of this action.

The contract was the usual standard public works contract, and contained provisions required by the P. W. A. to be included in all public works contracts which the government assisted in financing. It contained, among other provisions, the following:

"No assignment by the contractor of any principal construction contract, or any part thereof, or of the funds to be received thereunder, will be recognized unless such assignment has had the approval of the State Capitol Committee and the state director of the P. W. A. and the surety has been given due notice of such assignment in writing.

"No assignment will be approved unless the instrument of assignment contains a clause to the effect that it is agreed that the funds to be paid the assignee under the assignment are subject to a prior lien for services rendered or materials supplied for the performance of the work called for in said contract in favor of all persons, firms or corporations rendering such services or supplying such materials."

By reference, there was set out in the complaint a trust agreement, dated May 6, 1936, between Sheble Construction Company, a corporation, E. K. Sheble and Richard A. Swain, individually, as parties of the first part; Maryland Casualty Company, a corporation, and Glens Falls Indemnity Company, a corporation, called sureties, parties of the second part; The National Bank of Tacoma (now The National Bank of Washington), party of the third part; and Hansen & Rowland, Inc., a corporation, party of the fourth part. The purpose of this trust agreement was to obtain funds from the bank to carry on the contracts of Sheble Construction Company, and to protect the sureties and the bank, and to this end a special trust fund was to be created and placed in the bank in the name of Hansen & Rowland, Inc., for Sheble Construction Company's account, to be used solely for the following named purposes:

"It is mutually covenanted and agreed that such trust fund shall be used solely for the purposes following and no others, namely: .

"1. The payment for labor performed and for materials and supplies furnished and other necessary expenses incurred in the performance of said contract.

"2. The payment and discharge of certain loans heretofore made to or for the benefit of said contractors in connection with the performance of said contracts, as follows:

"(a) Loans aggregating $16,000 (approx) made by The National Bank of Commerce of Seattle, Washington.

"(b) Loans aggregating $8,000 made by Seattle Trust & Savings Bank.

"(c) Loans aggregating $4,500 made by the National Bank of Tacoma to Hansen & Rowland, Inc., as general agents for the sureties.

"3. The repayments of advances from time to time made by the bank to said trust fund as hereinafter provided.

"4. (Expenses incurred in the administration of the trust.)"

The complaint also by reference pleaded a supplemental agreement of May 6th, entered into between Sheble Construction Company, a corporation, E. K. Sheble and Richard A. Swain, individually, parties of the first part; and Maryland Casualty Company, a corporation, Glens Falls Indemnity Company, a corporation, and Hansen & Rowland, Inc., parties of the second part, wherein it was agreed that first parties would not enter into any new contracts until those set out in the trust agreement were completed; that first parties would devote their entire time to the contracts; and that the books, records and accounts of the first parties should be kept at such location as required by the sureties and available to them at all times. Hansen & Rowland, Inc., as trustee, was to receive, for its services, a fee of one and one-half per cent of the money received.

The complaint also by reference incorporates an assignment, dated May 6, 1936, whereby Sheble Construction Company assigned to Maryland Casualty Company and Glens Falls Indemnity Company, or to

Hansen & Rowland, Inc., their general agent, all moneys due, or to become due, under the general contract,

" . . . including any moneys due, or that may become due, for anything done in connection with the performance of said contract, or in any way as the result of said contract,"

and authorized the state of Washington to pay to Hansen & Rowland, Inc., any money due from the retained percentages. This assignment contained the following provision:

"It is understood and agreed that the funds to be paid the assignee under this assignment are subject to a prior lien for services rendered or materials supplied for the performance of the work called for in said contract in favor of all persons, firms, or corporations rendering such services or supplying such materials."

The complaint states that certain payments were made to appellant by the trustee under the contract.

The complaint further alleges that, upon the completion of the furnishing of material, a statement of the amount due was furnished to the sureties and to Hansen & Rowland, Inc.; that the state of Washington has in its possession funds due under the contract in excess of the total amount due laborers and materialmen; that Hansen & Rowland, Inc., now holds and retains in its possession large sums of money which have become due under the contract; that large amounts have been paid out by Hansen & Rowland, Inc., for purposes not connected with the contract; that appellant's lien has been destroyed; and that The National Bank of Tacoma and the sureties claim some right or interest in or to the funds now held by the state capitol committee.

Then follows a prayer for judgment for $2,919, and that such judgment be declared a lien upon all funds

now in the possession of, or hereafter coming into the possession of, respondents or any of them, by virtue of the general contract and the assignment thereof.

We think it well to state in the beginning that appellant filed no claim herein, as provided by Rem. Rev. Stat., §§ 1161 and 10320 [P. C. §§ 9727 and 9727-1], and frankly states that it is not endeavoring to enforce any statutory liability against the bondsmen. These facts should be kept in mind when considering the questions raised by appellant.

As we have heretofore said, we think the questions raised can be determined by an interpretation of the provision hereinbefore referred to and set out in the general contract and the assignment.

■ *First:* In support of its contention that an equitable lien was created by such provision, appellant cites the following cases from this court:

*Nelson v. Nelson Neal Lumber Co.,* 171 Wash. 55, 17 P. (2d) 626, 92 A. L. R. 554. Defendant company had contracted to sell its mill and equipment on a conditional sales contract, which contained a provision whereby the vendee agreed to keep the property insured, "loss, if any, payable to the vendor, as its interest may appear." The vendee insured the building, but in its own name. The court held that such a provision created an equitable lien against the insurance fund, but that such title or right is not enough to support an action for conversion. In this case, the following definition of an equitable lien is given:

" ' . . . it is a right of a special nature over property, constituting a charge or incumbrance thereon, so that the property itself may be proceeded against in an equitable action, and be either sold or sequestered upon proof of a contract out of which the lien could grow, or of a duty on the part of the holder of the property, so as to give the other party a charge or lien upon it. . . . while such a lien may be thus sus-

ceptible of enforcement, it is, nevertheless, but a mere floating and ineffective equity until such time as a judgment or decree is rendered actually subjecting the property to the payment of the debt or claim.' *Langford v. Fanning,* 7 S. W. (2d) (Mo. App.) 726.

" 'An equitable lien is the right to have property subjected in a court of equity to the payment of a claim. . . . It is neither a debt nor a right of property but a remedy for a debt. It is simply a right of a special nature over the property which constitutes a charge or incumbrance thereon, so that the very property itself may be proceeded against in an equitable action and either sold or sequestered under a judicial decree and its proceeds in one case, or its rents and profits in the other, applied upon the demand of the creditor in whose favor the lien exists.' *Kukuk v. Martin,* 331 Ill. 602, 163 N. E. 391."

*Speirs v. Jahnsen,* 143 Wash. 297, 255 Pac. 117. Plaintiff, in part payment of a building contract, executed to the contractor a deed to other property, which deed was placed in escrow, to be so held until the building was completed according to the terms of the contract. The deed was wrongfully delivered to the contractor before the completion of the building, and this action was brought to establish an equitable lien on the property covered by the deed as security for the performance of the contract. The court held an equitable lien was created, but it will be noticed that there was an express contract that the deed should be placed in escrow and held as security for the performance of the contract.

*American Sav. Bank & Trust Co. v. Lawrence,* 114 Wash. 198, 194 Pac. 971. This case involved an express contract between the parties, based upon a letter from Lawrence to the bank and acceptance of the terms of the letter by the bank. The court held that no equitable lien was created, but stated that such a lien might be created by an express executory agree-

ment which indicated an intention to make the particular property security for a debt or obligation.

*Hitt Fireworks Co. v. Scandinavian American Bank,* 114 Wash. 167, 195 Pac. 13, 196 Pac. 629. The question to be determined in this case was whether a special or general deposit was created by money placed in the bank. The court held it was a special deposit, and the bank was liable as trustee.

*National Surety Co. v. Swasey,* 154 Wash. 369, 282 Pac. 209. This was an action by plaintiff to establish and enforce an equitable lien on the property involved, and holds that where, upon request of the owner, the assignee of a mortgage and bond guaranteeing the completion of the building completes the building and pays off the liens, there was an equitable lien created in favor of the assignee and also in favor of the surety on the bond.

It seems to us that the facts in these cases are so different from the facts in the instant case that they can have no application herein.

The provision hereinbefore referred to in the general contract and assignment, upon which appellant relies, is not a new one; but has, for many years, in practically the same form, been incorporated in public works contracts, and has been passed upon by this court a good many times.

In the case of *First Nat. Bank v. Seattle,* 71 Wash. 122, 127 Pac. 837, decided in 1912, the contract provided that seventy per cent of the amount earned each month should be paid the contractor as the work progressed, and the remaining thirty per cent should be retained by the city to secure the payment of laborers and materialmen. It was admitted that the city had in this fund $5,730.47, which represented the balance due the contractor under the seventy per cent provision. The entire thirty per cent having been paid

out by the city to lien claimants, appellant contended that, under its assignment, it was entitled to this fund as against laborers and materialmen. The contract contained, among others, this provision:

" 'The contractor agrees to *pay* the wages of all persons, and for assistance of every kind employed upon or about said work, and the board of public works may withhold any and all payments under this contract until satisfied that such wages or assistance has been fully paid.' " (Italics ours.)

The assignment contained the following provision:

"This assignment is not valid as against any claim for labor, material, provisions and goods supplied and furnished in the prosecution of this contract."

In passing upon the above provision in the contract, the court made the following statement:

"Under this provision, the contractor could not claim anything due under his contract, while claims for labor and 'assistance of every kind' were unpaid and *filed* with the city against the amount due under the contract." (Italics ours.)

It will be noticed that the basis of this decision, in part at least, was that claims had been filed.

We think the case of *National Surety Co. v. American Sav. Bank & Trust Co.*, 101 Wash. 213, 172 Pac. 264, sustains respondents' position. In this case, Paul Steenstrup entered into a contract with the city of Seattle for the improvement of Western avenue. He furnished the statutory bond, with National Surety Company as surety. Arrangements were made with American Savings Bank & Trust Company to advance the necessary money as the work progressed, giving to the bank an assignment of all moneys to become due under the contract. At the foot of the assignment was the following provision:

" 'This assignment is not valid as against any claims for labor, material, provisions and goods supplied and furnished in the prosecution of this contract.' "

Plaintiff contended that the assignment, by reason of its being subject to claims for labor and material, made this money a trust fund in the hands of the bank, with which to pay such claims, though accruing and filed with the city after the estimates were earned by the contractor and paid to the bank. The court said:

"We cannot accede to this view. The conceded purpose of the assignment was to enable the contractor to finance the work. It must be assumed, therefore, that the parties thereto intended that the assignment should authorize the city to pay to the bank and the bank to receive, on each estimate when it accrued, whatever the city in pursuance of its contract would have paid to Steenstrup on each such estimate in the absence of the assignment. . . .

"In order to accomplish the purpose intended; viz., that of aiding the contractor to finance the contract, the assignment must be construed as passing an absolute title to any part of the seventy per cent fund coming due to the contractor, if actually paid to the assignee at a time when there were no claims for labor or material filed and when the contractor was not in default on his contract."

In the instant case, there is no allegation in the complaint that appellant had filed any claim prior to the time any money was paid the trustee, or at all, nor is there any allegation of a default on the part of the contractor.

The following cases also bear on the question of the rights of an assignee to the fund held by it: *Dowling v. Seattle*, 22 Wash. 592, 61 Pac. 709; *Pacific Coast Steel Co. v. Old Nat. Bank*, 134 Wash. 457, 235 Pac. 947.

We think the rule is well established that, in order to participate in the reserve fund, a creditor must qualify as a lien claimant by giving the statutory notice

of claim of lien. *Denham v. Pioneer Sand & Gravel Co.,* 104 Wash. 357, 176 Pac. 333.

Rem. Rev. Stat., § 10320 [P. C. § 9727-1], provides in part:

"Said fund shall be retained for a period of thirty (30) days following the final acceptance of said improvement or work as completed, and every person performing labor or furnishing supplies towards the completion of said improvement or work shall have a lien upon said fund so reserved, provided such notice of the lien of such claimant shall be given in the manner and within the time provided in section 1161 of this Code . . ."

In volume 7, Words & Phrases, 6715, we find the following definition of the phrase "subject to":

"The acceptance by a grantee of a deed containing the clause, 'subject, nevertheless, to all liens of mortgages and taxes thereon,' was not an admission that there were any such liens. If they existed, the title was subject to them; but their existence and validity were not conceded."

We cannot conceive that the provision in the contract and the assignment in the instant case created a lien, or that the parties thereto understood such was its effect.

Appellant contends the provision would have no meaning, if respondents' interpretation is placed upon it. With this, we cannot agree. We think it fair to assume that the parties to the agreement were all experienced in dealing with contracts such as here involved, and were familiar with the statutes relative to filing notice of claim of lien, in order that a materialman or laborer would have any rights against the retained percentage; and that they understood and believed the prior lien referred to was the lien provided by the above statutes. Respondents did not

agree, under this provision, to pay any materialmen or laborers, in our opinion, unless such party or parties complied with the statute, and thus brought themselves within the class to which the statutes give a prior lien. Clearly, appellant had no lien at the time the contract was entered into, and might never have one; nor do we think that, by incorporating this provision in the contract and assignment, respondents admitted that there was a lien then in existence, or that one would be created.

We must not confuse the terms *claim* and *lien*. There was nothing said about claims. It is entirely conceivable that one might have a claim, but certainly not a lien, as that term is commonly understood, until the statutory requirements had been complied with.

By the action of respondents, appellant has been deprived of no right to which it was legally entitled, but its present position is the result of its failure to file its notice of claim of lien. Had it done so, it could have protected itself, and would have been in a position to collect from the retained percentage whatever might be due it for the material furnished.

Appellant claims it would have had the right to its statutory lien against the retained percentage, regardless of the contract. This is undoubtedly true, but it is also true that the assignment would have been an absolute assignment as against laborers and materialmen, had it not been for this provision, under which protection was given to those having prior liens.

Based upon principles announced in the foregoing cases, we believe the rule in this state to be that an assignment of the proceeds to be paid under a public works contract, containing a provision relative to services rendered and materials furnished such as contained in the contract and assignment in the instant

case, does not create an equitable lien on the funds paid to the assignee; but the effect of such an assignment is to give a preference to laborers and materialmen who have filed their claims in accordance with the statutory provisions hereinbefore referred to, and would authorize the contracting party (in this case, the state) to withhold more than the retained percentage if necessary to pay the claim or claims of any such laborer or materialman furnishing labor or supplies in carrying out the contract so assigned.

We have taken into consideration certain allegations of the amended complaint relative to the understanding as to the effect of the assignment herein. These allegations could only be admissible in the event that there was ambiguity or uncertainty in the contracts referred to, or to explain the terms thereof, where the language is doubtful, or to supply omissions. We do not believe any of these conditions appear herein, and while a demurrer admits the truth of facts well pleaded, it does not admit the truth of conclusions, immaterial, irrelevant, or incompetent matter.

*Second:* It is contended by appellant that the trust agreement of May 6th, the agreement supplementing the trust agreement, and the assignment, constitute an assignment for the benefit of creditors. We think it clear that such was not the intention of the parties, and we are just as clear that such was not the legal effect of these contracts. We believe our answer to appellant's first question is also determinative of this question adverse to appellant's contention.

*Third:* In view of the fact that we have held that appellant had no lien on the funds in the hands of the trustee, and that it was not a party to any of the contracts herein referred to, we think it follows as a matter of course that it had no such interest in the funds as to entitle it to bring this action, and the

third question must necessarily, therefore, be answered in the negative.

We believe the judgments of the trial court in sustaining the demurrers of the respondents were correct, and they are accordingly affirmed.

BLAKE, C. J., MAIN, STEINERT, and ROBINSON, JJ., concur.

[1]Reported in 87 P. (2d) 280.